UNITED STATES of America, Plaintiff-Appellee,

v.

John CALDARAZZO et al., Defendants-Appellants.

Nos. 17962–17965.

United States Court of Appeals, Seventh Circuit.

June 23, 1971.

Rehearings Denied July 28, 1971 in Nos. 17962 and 17965.

Rehearing Denied Aug. 6, 1971 in No. 17963.

---

6. United States v. Isenring (7th Cir., 1969), 419 F.2d 975.

7. See United States v. Phifer, 440 F.2d 462, 466 (7th Cir., 1971).

Frederick F. Cohn, John Powers Crowley, Julius Lucius Echeles, Chicago, Ill., for defendants-appellants.

John L. Barton, Ottawa, Ill., for John Orlando Caldarazzo.

William J. Bauer, U. S. Atty., Sheldon Davidson, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Peter F. Vaira, Terrance A. Norton, Special Attys., Dept. of Justice, John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before SWYGERT, Chief Judge, and CASTLE, Senior Circuit Judge, and KERNER, Circuit Judge.

KERNER, Circuit Judge.

Defendants-appellants, John Caldarazzo, Philip Barone, Robert Brown and

Frank DeLegge, Sr., were charged in a one-count indictment with conspiring to obstruct, delay and affect commerce and the movement of articles in commerce by robbery. 18 U.S.C. §§ 1951(b) (3) and 1951(b) (1). The case was tried to a jury, and all defendants were convicted; defendant Caldarazzo was sentenced to a term of 8 years, defendant Barone 4 years, defendant Brown 7 years, and defendant DeLegge, Sr., 15 years.[1] We affirm all convictions.

## I.

At trial, the government placed primary reliance on two witnesses, Michael LaJoy and Joseph D'Argento, both participants in the crime. Their testimony reveals that LaJoy and DeLegge, Jr. had a conversation in June, 1965, in which reference was made to a Crystal Lake, Illinois, jewelry salesman whom they had robbed six months earlier and whose stolen merchandise had been sold for $21,000. The two men agreed that it was likely the salesman's jewelry supply was replenished and that another robbery of the salesman should be considered. Defendants DeLegge, Sr., Brown and Caldarazzo were informed of the prospective plans, and Caldarazzo and DeLegge, Sr., after being given directions by DeLegge, Jr., drove to the salesman's residence to survey the situation.

A week later, another meeting of the four men occurred in which Caldarazzo stated that he had witnessed the jewelry salesman back his car into the driveway and transfer what appeared to be jewelry grips into his house. LaJoy mentioned that a *modus operandi* different from the one employed in the prior robbery would be necessary, and DeLegge, Jr., advanced a plan whereby he would dress as a woman and force his way into the house when someone answered the door. Other particulars were discussed, and the following Saturday was designated as the appropriate day.

Upon being informed on Saturday, June 12, 1965, that preparations were completed, LaJoy telephoned Joseph D'Argento, who had that day been released from jail, and arranged a meeting at the Riviera Bowling Alley. D'Argento was advised on the plans and agreed to participate. However, when the men arrived at the salesman's home, they found both the salesman and his family gone, and postponed the robbery until the following evening. Caldarazzo then suggested dropping off the "work car"[2] at the home of Phil Barone, thereby avoiding a considerable drive in that car. Defendant Barone, who had not been previously involved, agreed to store the "work car" and to permit the use of his premises for counting the "stuff" subsequent to the robbery.

On Sunday, June 13, the robbery as planned was accomplished, and the active participants returned to defendant Barone's residence to assess the value of the jewelry and to divide a small portion of the items stolen. Defendant Barone participated in the partial division, selecting some articles of jewelry for himself and his wife. The remaining jewelry was eventually transferred to the veterinary hospital of Dr. Haxby, who was not charged in the indictment.

## II.

■ Defendants first contend the conspiracy proved at trial was not shown to have embraced a substantive act affecting interstate commerce so as to render applicable the provisions of the Hobbs Act. 18 U.S.C. § 1951. The Hobbs Act provides federal sanctions for robbery which "in any way or degree obstructs, or delays, or affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951(a). The term "commerce" is defined by the Act and includes, among other definitions, "all other commerce

---

1. The sentence of DeLegge, Sr. was made to run concurrently with a sentence imposed in another criminal matter. DeLegge, Jr. who was tried and convicted, is not involved in this appeal.

2. We are informed that the term "work car" serves to designate the automobile used in perpetrating the crime.

over which the United States has jurisdiction." 18 U.S.C. § 1951(b) (3). The Supreme Court has construed the language of the statute as manifesting a Congressional intent to use all the constitutional power it possesses to prevent interference with interstate commerce by robbery, extortion, or physical violence. Stirone v. United States, 361 U. S. 212, 215, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

Wegner, the jewelry salesman from whom the items were taken, represented four different manufacturing firms. Each of these firms was heavily engaged in interstate commerce and sold and distributed its products to retail jewelry stores throughout the United States. In his capacity as salesman for these firms, of which three were located in New York City, Wegner had the exclusive right to sell and obtain orders for their products in Michigan, Ohio, Indiana, Kentucky, Illinois and Wisconsin.

This mode of sales and distribution is obviously dependent upon the facilities of interstate commerce. As a salesman, Wegner plays an essential part in that system; yet, he was effectively prevented from performing his duties since he had no display or sales merchandise. While he did receive some items from his firms within three weeks, it is undisputed that his activities were impaired and that commerce was, at the least, delayed.[3] Thus, we have no doubt that the actions of the defendants placed them in violation of the substantive provisions of the Hobbs Act.

### III.

■ Defendants next urge that the trial court erred in admitting testimony relating to a robbery of the same victim six months prior to the one charged in the indictment. While it is true that such testimony has its adverse effects, we have held that evidence of other criminal acts is admissible when so blended with the charged crime that proof of one incidentally involves the other or explains the particular circumstances thereof. United States v. McCartney, 264 F.2d 628, 631 (7th Cir. 1959), cert. denied 361 U.S. 845, 80 S.Ct. 98, 4 L.Ed.2d 83 (1959). Because of the prejudicial nature of the evidence, we have disallowed evidence which has only general applicability to the crime in question. United States v. Magee, 261 F.2d 609 (7th Cir. 1958).

In the case at bar, evidence of the prior crime' was necessary if the jury was to be aware of the manner in which the conspiracy was planned and the particular motive for the robbery. Certainly the amount secured from the sale of jewelry taken in the prior robbery of Wegner, who had been otherwise unknown to most of the defendants, was a substantial inducement to participate in the second robbery. And, as evidenced by the facts set out in part I of this opinion, the methods used in effecting the second robbery of Wegner were determined in light of the defendants' experience in the first robbery. For example, there was no need to obtain background information on Wegner. If evidence pertaining to the first robbery had been excised, the jury would not have heard evidence on the reason for Wegner's selection or the rationale behind effecting the robbery at Wegner's residence. Hence, we cannot say it was error on the part of the trial judge to admit this testimony.

### IV.

■ Defendant DeLegge, Sr., contends the district court erred when it ruled that two of the government's witnesses, Michael LaJoy and Joseph D'Argento, need not disclose their ad-

3. Defendant Brown maintains the district court erred in sustaining the government's objection to questions pertaining to the size of orders obtained by Wegner after the robbery. Defendant theorizes that if he could have shown that Wegner's established customers had ordered correspondingly greater amounts of jewelry after the robbery, there would be no effect on commerce. The obvious defect in the theory is that commerce would be nonetheless delayed and the robbery would be nonetheless a violation of the Hobbs Act.

dresses or places of employment. Reliance is placed on Smith v. Illinois, 390 U.S. 129, 134, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), where the Supreme Court held that foreclosing such rudimentary inquiry was equivalent to emasculating the right of cross-examination itself. This court, however, has not interpreted the decision in *Smith* as mandating disclosure where such disclosure would endanger the witness or his family. United States v. Palermo, 410 F.2d 468, 472 (7th Cir. 1969) ; United States v. Varelli, 407 F.2d 735 (7th Cir. 1969) ; United States v. Daddano, 432 F.2d 1119 (7th Cir. 1970). The district court, pursuant to this court's suggestion in United States v. Varelli, *supra,* ns. 11 and 12, conducted a hearing outside the presence of the jury to determine whether witnesses LaJoy and D'Argento should be excused from disclosing their addresses and places of employment. Defendant DeLegge, Sr. does not contend that the district court's decision on this matter lacks factual support but that, in effect *Palermo, Varelli* and *Daddano, supra,* are improperly decided. We disagree and decline to overrule those cases.

### V.

■ Defendant Barone, in an ingenious attempt to secure a reversal, argues that the trial court erred in denying his motion for a bill of particulars. The thrust of defendant's argument is that when LaJoy first gave a statement to the government, he omitted all references to the Saturday, June 12, visit to Barone's home, and that the government, if forced to respond to a bill of particulars, would have also omitted these references. However, defendant overlooks

the real possibility that the government had access to this information and would have included these references. In effect, Barone seeks to convert the statement of a prospective witness, which is not necessarily exhaustive, into a bill of particulars ; there is no legal basis for such a disposition. Also, defendant has failed to show that he was either surprised by evidence he was unprepared to meet or that he was unable to prepare a proper defense because of the insufficiency of the charge. United States v. Stahl, 393 F.2d 101, 104 (7th Cir. 1968). Thus, defendant's argument must fail.[4]

### VI.

■ Defendant Brown requested a trial by the court, and not by jury. The government refused to waive trial by jury and the trial court, acting pursuant to Rule 23 of the Federal Rules of Criminal Procedure,[5] denied defendant's request. Defendant concedes, as he must, that Rule 23 is clear and unambiguous, but relies on certain language in Singer v. United States, 380 U.S. 24, 37, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), that there may be some circumstances where denial of defendant's request would result in the denial of an impartial trial. Defendant, however, does not claim that he did not receive an impartial trial ; he merely asserts that, because of possible factual complexities in a conspiracy charge, his request for a bench trial should have been approved. Apparently, defendant would have this court grant relief when there has been no injury, and this we cannot do.

### VII.

■ Defendant Barone contends that the district court erred in restricting

---

4. Defendant Caldarazzo argued on appeal that certain evidence was admitted by the trial judge in violation of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). However, the search in question occurred prior to the decision in *Chimel,* and, therefore, *Chimel* is inapplicable. Williams v. United States, 401 U.S. ——, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). The conduct of the agents was clearly lawful under decisional law

applicable at the time of the search. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) ; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

5. Rule 23 provides in pertinent part: "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government."

cross-examination on the amount of jewelry recovered by the government. Wegner had estimated that 75% of the jewelry had been returned to him while witnesses LaJoy and D'Argento had estimated that 95% of it remained after the initial selection at Barone's home. We believe the restrictions by the district court do not constitute reversible error, because of either immateriality or harmless error. The only arguable material issue to which this testimony was relevant was the defendant's credibility, and the amount of jewelry recovered does not necessarily detract from Barone's credibility. This is true even under the government's theory of the case since it was not claimed that Barone acquired jewelry after the initial division or that he maintained possession and control of the stolen goods. Hence, the examination would have had only tangential relevance to Barone's credibility.

Barone also asserts that he was impermissibly restricted in his cross-examination of LaJoy and D'Argento as to the proceeds of the first Wegner robbery. We find no error.

Accordingly, this cause is affirmed. Affirmed.