COMMONWEALTH *vs.* JAMES M. MCGRATH.

Suffolk.    October 1, 1973. — November 2, 1973.

Present:   TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Comment by judge, Fair trial. *Constitutional Law,*
Due process of law, Confrontation of witnesses. *Jury and Jurors. Evidence,* Fresh complaint, Corroborative evidence, Address of witness.

It was not shown by the record of a criminal case that the defendant was
denied a fair trial by reason of critical remarks made by the trial judge
to a different jury who earlier had returned a verdict of not guilty in
another, unrelated case. [244-246]
On the record of a trial for rape, where there was evidence that after the
alleged rape the defendant kept the victim at gunpoint in an automobile
for two hours, when police officers arrived at the automobile, there was
no error in the admission in evidence of statements shortly thereafter
made by the victim to the police as fresh complaints corroborative of
her testimony. [247-250]
In the circumstances of a trial for rape, no violation of the defendant's
constitutional right of confrontation of witnesses was shown in exclusion, on cross-examination of the victim by the defendant's counsel, of
a question as to where she was presently living. [250-252]

INDICTMENTS found and returned in the Superior Court on
November 23, 1970.

The cases were tried before *Paquet,* J.

*David M. Skeels* for the defendant.

*Elizabeth C. Casey,* Special Assistant District Attorney
(*Robert J. McKenna, Jr.,* Legal Assistant to the District Attorney, with her) for the Commonwealth.

WILKINS, J.   The defendant was convicted of rape, kidnapping, assault with a dangerous weapon, and unlawfully
carrying a firearm. The case, which comes before us on a
substitute bill of exceptions, presents three questions for our
consideration.

Commonwealth *v.* McGrath.

The defendant first claims that the jury were not impartial because the judge had earlier made certain critical remarks to a different jury who had returned a verdict of not guilty in an unrelated case. Next, the defendant claims that certain statements made by the victim to police officers were improperly admitted as fresh complaints of the victim. Finally, the defendant argues that during the cross-examination of the victim the judge improperly denied the defendant the right to obtain the present address of the victim. The facts relating to each issue will be set forth in the appropriate section of this opinion. There was no error.

1. We turn first to the defendant's claim that because of the judge's critical comments to the jury in an earlier criminal case, the defendant was denied the fair trial to which he was entitled under the due process clause of the Fourteenth Amendment to the Constitution of the United States.

On the day that the case now before us was referred to the judge for trial, the judge criticised a jury which had returned a verdict of not guilty in an unrelated case. He told those jurors that the defendant "had offered to plead guilty in return for a suspended sentence, but that he [the judge] did not give suspended sentences in such cases." The bill of exceptions does not disclose the nature of the crime or crimes charged in the earlier case. The judge further told that jury that "he did not understand how the jury could disregard credible evidence given by dedicated police officers." The bill of exceptions does not indicate the importance of the testimony of the police officers in that earlier trial. Nor does it purport to set forth in full the judge's statement made to that earlier jury.

The defendant moved before another judge to have his case continued on the ground that the remarks made to the jury in the earlier case following their verdict "may have prejudiced the minds of any jury selected from the same jury pool." That motion was denied. The defendant excepted.

Prior to the empanelling of the jury in this case, the defendant submitted a request that the judge ask certain

Commonwealth *v*. McGrath.

questions of the prospective jurors.[1] These questions sought, among other things, to discover whether any of the jurors had, directly or indirectly, heard the statements made by the judge to the earlier jury. The judge declined to ask the questions of the jurors. He stated that he had "checked and [found] that none of the jurors on this panel were" members of the earlier panel. He asked the jurors whether any of them had served on the jury in the earlier case and "received no response." There is no showing that any juror who sat on this case was in the court room when the judge made his remarks to the earlier jury.

On this state of the record, the defendant asserts that he has shown enough to support his constitutional claim that he was denied a fair trial. Granting that the matter of what questions should be put to prospective jurors is normally discretionary with the judge (see *Commonwealth* v. *Nassar,* 354 Mass. 249, 253-254 [1968], cert. den. sub nom. *Nassar* v. *Massachusetts,* 393 U. S. 1039 [1969]) and that similarly the granting or denial of a continuance is discretionary (*Commonwealth* v. *Klangos,* 326 Mass. 690, 691 [1951]); *Commonwealth* v. *Smith,* 353 Mass. 442, 445 [1968]), he claims that in these circumstances more was constitutionally required to have been done than was done in order to avoid possible prejudice to him. Compare *Commonwealth* v. *Ross,* 363 Mass. 665 (1973).

Any assertion that one or more jurors might have been prejudiced, or might have been influenced to act in a way which would not incur the wrath of the judge, is admittedly

---

[1] The questions were as follows:

"1. On March 22, 1971, following the verdict of the jury in the case of Commonwealth versus James White, his Honor Justice Paquet made certain statements to the jurors who were then present. If you were present at the time these statements were made or if you have heard from any other person just what these statements were, would you please raise your hand.

"2. Do any of you feel that these statements would influence your verdict in any way in this case?

"3. Are you aware that the jury and the jury only has sole responsibility for deciding the facts of the case?

"4. Are you aware that you should give no weight whatsoever to any opinion which this Honorable Court may have as to the facts?"

speculation. This was a different group of jurors. The earlier case may have involved very different circumstances. There is, for example, no showing of the relative roles of the police officer witnesses in the earlier case and in this one. Here the testimony of police officers, which is described in the next section of this opinion, was directly material only to the relatively minor crime, in the circumstances, of unlawfully carrying a firearm. As to the charges of rape, kidnapping and assault with a dangerous weapon, the victim's testimony was fundamental and the related testimony of police officers only corroborative.

Assuming any juror heard indirectly of the judge's remarks to the earlier jury, it is nevertheless speculative as to the effect which such remarks might have on a juror. The judge in this case may well have instructed, and presumably did instruct, the jury concerning their duty to decide the case on the facts, unaffected by anything they may have heard elsewhere. The defendant does not assert that the judge did not adequately cover the duty of the jury in his charge.[2] The full remarks of the judge to the jury in the earlier case are not before us.

The defendant has simply failed to show that he was denied due process of law (a) by the denial of his motion for a continuance, (b) by the judge's earlier remarks or (c) by the handling of the request for the questioning of the jurors at his trial.

What we have said should not be construed as an indorsement of a judicial practice of chastising jurors who disagree with the judge's views of the facts. In other circumstances a judge's critical remarks to a jury could be so damaging to the rights of litigants that even other members of the jury pool might be influenced to such a degree that corrective instructions could not cure the harm done. Here, however, the defendant has not shown that such a circumstance exists.

2. The defendant next contends that certain statements

---

[2]The bill of exceptions does not contain the judge's charge to the jury. Due apparently to the death of the stenographer, counsel have not been able to locate any stenographic notes of the judge's charge.

made by the victim were not admissible as fresh complaints. A complaint made by a victim of rape, attempted rape or other sex crime has long been admissible in this Commonwealth if the complaint is made soon after the commission of the offence. See *Commonwealth* v. *Cleary,* 172 Mass. 175, 176-177 (1898). Although not admissible to prove the truth of the facts asserted in the statement, a fresh complaint made by a victim is admissible to corroborate the victim's testimony. *Commonwealth* v. *Ellis,* 319 Mass. 627, 629 (1946). Because the absence of a prompt complaint might itself tend to discredit the witness's testimony, it is not essential to the admissibility of the victim's fresh complaint that the defendant has first attempted to discredit the witness. *Commonwealth* v. *Hanger,* 357 Mass. 464, 466 (1970), and cases cited. See *Glover* v. *Callahan,* 299 Mass. 55, 57-58 (1937). Thus the existence and details of a victim's fresh complaint are admissible as part of the prosecution's direct case. The question whether the victim's complaint is admissible as a fresh or prompt complaint is one as to which the judge should make a preliminary finding. *Commonwealth* v. *Cleary,* 172 Mass. at 177 (1898).

There is no dispute as to these principles of law. The defendant does argue, however, that two statements of the victim in the circumstances were not fresh complaints. Resolution of this issue requires a consideration of the particular facts, to which we now turn.

The victim testified that on November 23, 1970, she left her place of employment at 5 P.M. and went to a nearby garage to pick up her boyfriend's car. It was "pitch black" where the car was parked. As she was unlocking the car, the defendant, who was carrying a gun, appeared and ordered her into the car. She asked him to let her go. He threatened to shoot her if she did not shut up. He then ordered her to get into the back seat and to take off her stockings and pants. After she did so, he had intercourse with her. Thereafter they remained in the back seat. She was nervous and kept talking.

Approximately two hours later a car, subsequently disclosed to be occupied by Captain Devin and another officer

in the Boston Police Department, came up behind the parked car. Devin approached the parked car. The defendant put the gun on the floor of the car. In the course of questioning the defendant and the victim, Devin noticed the gun. The defendant admitted that he did not have a license for the gun. The defendant was then placed in the police car.

At this point a conversation took place between the victim and Devin, and shortly thereafter another conversation took place in the garage between the victim and a Detective Murphy who had been called to the scene. The defendant objected to the introduction in evidence of the statements then made by the victim to the police officers. The judge conducted a voir dire on the question whether statements made to the police in the garage (and later at the police station) were admissible as fresh complaints. After hearing the victim he ruled that the statements were admissible as fresh complaints.

Following the voir dire the victim testified further before the jury, but did not testify as to the substance of any statement she made about the defendant to the police in the garage. Devin and Murphy did so testify. Devin testified that after he had noticed the gun on the floor of the car and the defendant had admitted to having no license for the gun, the defendant was placed under arrest and advised of his rights. The victim then told him that she had been held at gunpoint since 5 P.M. When Devin was asked whether the victim told him that she had been raped, he replied, "She didn't use the word rape." On cross-examination Devin testified that while talking to him in the garage, the victim did not say she had been raped.

Murphy next testified that he had had a conversation at the garage with the victim who was "very nervous" and had a "trembling" voice. When Murphy was asked to state the "contents of the conversation," the defendant objected on the ground "that the fresh complaint had been made at a later time." The judge overruled the objection and instructed the jury concerning the law of fresh complaints. He stated in part, "Now, the statements that this girl made to this officer

may be admitted because I have ruled that they fall in the category of fresh complaint. They are not evidence of the truth of the matter. . . . [T]hey are considered as corroboration of the statements that she made on the stand and that she did in fact make a complaint." The defendant then requested the court to instruct the jury that whether a statement is a fresh complaint is a question ultimately for the jury to decide. The judge responded within the hearing of the jury that "[t]he jury knows it is for them to decide every question of fact. You will get all the instructions that this Court is obliged to give, at the proper time." The defendant excepted.

Murphy then testified, over further objection, that the victim told him that the defendant had kept her in the car for two hours at gunpoint. When he asked her whether anything else had happened, she lowered her head. The defendant moved that the judge instruct the jury to disregard the testimony because "there was no complaint made at the time of any sexual attack." The motion was denied, and the defendant again excepted.

The victim was taken to the police station, a trip taking not more than five minutes. There Murphy took a statement from the victim. She stated that she had been raped. She said that throughout she thought her life was in jeopardy and that the defendant threatened to kill her if she did not do as he told her.

The defendant concedes that the statements made at the police station were admissible as fresh complaints but undertakes to treat the police questioning at the garage as an event independent of the questioning at the police station. We do not agree.

It is arguable that a question of fact, for the judge initially and the jury ultimately, could have been raised by the evidence that, when asked if she had been raped, the victim dropped her head. Such conduct might itself constitute a silent, but poignant, complaint of rape. We need not deal with this question because we believe that the entire process of questioning, broken only by a five minute trip from the

garage to the police station, was a single event constituting a fresh complaint of rape.

The judge's initial statements concerning his ruling that the complaint was a fresh complaint were, standing alone, perhaps too forceful as to the effect and finality of his views. See *Cahalane* v. *Poust,* 333 Mass. 689, 693-695 (1956). However, he immediately indicated that questions of fact inherent in his conclusion were matters which at the appropriate time would be submitted to the jury for their decision on proper instructions. There was no error.[3]

3. The defendant lastly objects to the ruling of the judge in excluding evidence of the home address of the victim at the time of trial. On direct examination the victim disclosed her address at the time of the offences, a date only four months before trial. The defendant thereafter asked her on cross-examination, "Where are you living now?" After a colloquy between defence counsel and the judge, which is set forth in the margin,[4] the judge excluded the question. The bill of exceptions does not disclose any other restraint on the cross-examination of the victim. Nor does it disclose any attempt by the defendant to question the victim further for information as of the time of trial. In the circumstances the defendant clearly was aware well before trial that the victim was to be the significant prosecution witness.

The defendant relies on the general rule that, without any obligation to explain the purpose of his inquiry, a defendant has a constitutional right, protected under the Sixth and Fourteenth Amendments to the Federal Constitution, to ask a prosecution witness to disclose his present place of residence. *Smith* v. *Illinois,* 390 U. S. 129 (1968). Cf. *Alford* v.

---

[3]We have no reason to believe appropriate instructions were not given on this issue. The defendant does not argue otherwise.

[4]The bill of exceptions sets forth the following: "On cross-examination . . . [the victim] was asked, 'Where are you living now?' The prosecuting attorney objected and the following exchange took place:" THE JUDGE: "Excluded." COUNSEL FOR THE DEFENDANT: "Note my exception." THE JUDGE: "You don't want an address to summons the girl, do you?" COUNSEL FOR THE DEFENDANT: "I think this would be important." THE JUDGE: "Do you want the address to summons the girl?" COUNSEL FOR THE DEFENDANT: "No, because she is on the stand." THE JUDGE: "All right. I will exclude it." COUNSEL FOR THE DEFENDANT: "Note my exception." THE JUDGE: "Yes."

*United States,* 282 U. S. 687 (1931). Consistent, however, with the view expressed in the concurring opinion of Mr. Justice White in *Smith* v. *Illinois, supra,* at 133-134 (1968), to the effect that consideration of the safety of the witness might justify nondisclosure of his present address, an exception has evolved to the general requirement of disclosure of the witness's present place of residence. See *United States* v. *Saletko,* 452 F. 2d 193, 196 (7th Cir. 1971), and cases cited, cert. den. sub nom. *Saletko* v. *United States,* 405 U. S. 1040 (1972); *United States* v. *Alston,* 460 F. 2d 48, 52 (5th Cir. 1972), and cases cited, cert den. sub nom. *Alston* v. *United States,* 409 U. S. 871 (1972); *United States* v. *LaBarbera,* 463 F. 2d 988, 990 (7th Cir. 1972); *People ex rel. Dunbar* v. *District Court of the Seventh Judicial Dist.* 177 Colo. 429 (1972); *State* v. *Hill,* 211 Kans. 287, 299 (1973).

If extensive cross-examination has been afforded a defendant so that in the words of the *Alford* case, 282 U. S. 687, at 693 (1931), the "essential step in identifying the witness with his environment" has occurred, and if no harm has been shown by the concealment of the witness's present address, the nondisclosure of information concerning the witness's home address or present employer without any demonstration of a threat to the witness or his family has been upheld in the particular circumstances. *United States* v. *Lawler,* 413 F. 2d 622, 627 (7th Cir. 1969), cert. den. sub nom. *Lawler* v. *United States,* 396 U. S. 1046 (1970). *United States* v. *Marti,* 421 F. 2d 1263, 1265-1266 (2d Cir. 1970). The nature of the crime charged and the fact that the witness was claimed to be a victim of physical violence, as in the case before us, might also make unnecessary any explicit disclosure of the threat of harassment or harm, because the threat is inherent in the situation. See *United States* v. *Daddano,* 432 F. 2d 1119, 1128 (7th Cir. 1970), cert. den. sub nom. *Daddano* v. *United States* 402 U. S. 905 (1971). But normally the prosecution has the burden of showing an actual threat to the witness. See *United States* v. *Palermo,* 410 F. 2d 468, 472 (7th Cir. 1969). Thus an unexplained refusal to permit a defendant to inquire concerning the place of resi-

dence of a prosecution witness generally constitutes a denial of the defendant's constitutional right to confront the witnesses against him.

In the circumstances of this case, however, no constitutional right of the defendant to confront a witness against him was abridged by the ruling of the judge. The defendant was charged with committing crimes of violence against the witness. The home address of the witness four months before trial, at the time of the alleged offences, was disclosed during the victim's testimony. Cross-examination of the witness was not otherwise restricted. Standing alone these facts might not be sufficient to sustain the judge's exclusion of the witness's home address. However, the colloquy between defence counsel and the judge gave the defendant an opportunity to explain the need for an answer to the question, and the defendant did not take advantage of that opportunity. Nor did he, after the judge's ruling, press his inquiry concerning the victim's present circumstances. If the defendant had a particular reason for seeking the present address of the witness, he should have explained it "so that the judge could weigh these requirements against danger to the witness." *United States* v. *Bennett,* 409 F. 2d 888, 901 (2d Cir. 1969), cert. den. sub nom. *Jessup* v. *United States,* 396 U. S. 852 (1969), cert. den. sub nom. *Thomas* v. *United States,* 402 U. S. 984 (1971). Counsel for the defendant offered as a justification for his question concerning the witness's present address the uninformative statement "because she is on the stand." Such a remark disclosed nothing not already apparent and constituted no assistance to the judge in his attempt to ascertain why an answer should be required.[5]

*Judgments affirmed.*

[5]Where the prosecution objects to the disclosure on cross-examination of information concerning a witness and the judge does not immediately ask for an explanation of the reason for the objection out of the hearing of the jury, it would seem appropriate for the prosecution to volunteer that it is prepared to explain at the bench (but on the record) its reasons for objecting to the disclosure. *United States* v. *Alston,* 460 F. 2d 48, 53 (5th Cir. 1972), cert. den. sub nom. *Alston* v. *United States,* 409 U. S. 871 (1972). The court should then determine whether a hearing in the absence of the jury would be appropriate. See *United States* v. *Caldarazzo,* 444 F. 2d 1046, 1050 (7th Cir. 1971), cert. den. sub nom. *DeLegge* v. *United States,* 404 U. S. 958 (1971). A dispute concerning the propriety of open disclosure of informa-

tion concerning a witness, which requires a balancing between a defendant's right generally to know and a witness's justifiable concern for his safety and the safety of his family, might in some instances be properly resolved by the private disclosure of that information to defence counsel or by general information concerning the defendant, or both. See *United States* v. *Marti,* 421 F. 2d 1263, 1266 (2d Cir. 1970); *Winkle* v. *Texas,* 488 S. W. 2d 798 (Tex. Ct. Crim. App. 1972); *People* v. *Finch,* 47 Ill. 2d 425, 431-436 (1971).