Gants, Ralph D., J.
The defendant Robert Cheers is accused of shooting Javon Fields in broad daylight on Columbia Road in Dorchester on March 14, 2007. Although one of the bullets struck Fields in the face, he has survived, so the defendant is charged, among other crimes, with assault and battery with a dangerous weapon rather than murder. A number of civilians observed the shooting, and at least one identified the defendant as the shooter. On May 31, 2007, four days before the defendant’s arraignment, Fields was shot again by unknown individuals.
The Commonwealth has moved for a protective order under Mass.R.Crim.P. 14(a)(6) to protect the alleged victim and his family, and civilians who will be prospective witnesses at trial in the Commonwealth’s case-in-chief. In short, the Commonwealth through this protective order seeks to impose three restrictions upon the defendant and defense counsel:
*80 1. Defense counsel would be told the names of civilian witnesses and could share this information with those assisting him in the defense, but would be barred from telling the names to anyone else, including the defendant and his family, until a date set by the Court after the case is scheduled for trial.
2. Defense counsel would receive witness statements and grand jury testimony and could share their content with those assisting him in the defense, but would be barred from revealing their content to anyone else, including the defendant and his family.
3. With respect to documents other than witness statements and grand juiy testimony, including the 911 tape recording, defense counsel could provide a copy to the defendant, but only in redacted form, and would be barred from providing a copy to anyone other than the defendant and those assisting him in the defense.
After hearing, the motion for protective order is ALLOWED ONLY IN PART.
DISCUSSION
Under Mass.R.Crim.P. 14(a)(1), the Commonwealth must disclose to the defense “at or prior to the pretrial conference,” inter alia, “the grand juiy minutes, and the written or recorded statements of a person who has testified before a grand juiy,” “(t]he names, addresses, and dates of birth of the Commonwealth’s prospective witnesses other than law enforcement witnesses,” and “(a]ny facts of an exculpatoiy nature.” Mass.R.Crim.P. 14(a)(1). Since under the Criminal Time Standards the initial pretrial conference shall be conducted within one month of arraignment, this Rule essentially means that defense counsel and the defendant will know the names and addresses of witnesses, and the content of their grand juiy testimony, early in the criminal process. Mass.R-Crim.P. 14(a)(6), however, permits a court to issue a protective order “(u]pon a sufficient showing” to deny, restrict, or defer discovery as appropriate. The Rule provides in pertinent part:
Upon a sufficient showing, the judge may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate. The judge may alter the time requirements of this rule. The judge may, for cause shown, grant discovery to a defendant on the condition that the material to be discovered be available only to counsel for the defendant. . .
Mass.R.Crim.P. 14(a)(6).
This case presents a set of facts that is not uncommon in Suffolk County. The defendant has been charged with a heinous crime of violence. Since the shooting alleged in this case, the alleged victim has been shot again, by persons unknown. Based on the affidavit of the Assistant District Attorney prosecuting the case, several civilian witnesses and some members of the alleged victim’s family are afraid that they will be hurt or intimidated if the defendant learns of their identities and location. There is no evidence that the defendant is in any way responsible for the second shooting or has done anything (apart from the shooting for which he is charged) to indicate that he, in fact, will cause them to be injured or intimidated. The issue, then, is whether the fear of the civilian witnesses and the alleged victim’s family, arising from the nature of the crime charged, the subsequent shooting, and their apparent recognition that other witnesses in other cases have been intimidated or injured in an effort to prevent them from giving testimony or to alter their testimony, constitutes the “sufficient showing” that may justify a protective order “for cause shown.” This Court knows of no Massachusetts appellate case law that specifically addresses this issue in the context of a Mass.R.Crim.P. 14(a)(6) motion for a protective order.[1]
The issue is hardly a simple one. This Court takes judicial notice that witness intimidation and retaliation is a significant problem in Suffolk County, especially in cases involving serious crimes of violence where the sentences upon conviction are likely to be long. This Court also takes judicial notice that, as a result, many witnesses in such cases are afraid, both for themselves and their families. This Court also takes judicial notice that some of these witnesses,-out of fear, have refused voluntarily to appear at trial and evaded process to secure their appearance, and some have altered their testimony at trial to avoid fingering the defendant. Apart from those facts for which this Court may take judicial notice, the Commonwealth has furnished police reports demonstrating that, in other cases not involving this defendant, copies of police reports and transcripts of grand juiy testimony have been found in the possession of persons other than the defendant in those cases. This Court takes judicial notice that witness fear and intimidation are having a corrosive impact on the quality of justice being provided in this Courthouse.
At the same time, this Court also takes judicial notice that defense attorneys need to know the identities of key witnesses so that they can conduct their own investigation of the events charged, explore the possibility that victim or witness testimony is marred by bias, self-interest, or honest mistake, and evaluate the strength of the Commonwealth’s case at trial to determine whether a guilty plea may best serve the interests of their clients. This Court also recognizes that it is often difficult for defense attorneys to develop a relationship of trust with their clients, especially when the defense attorney is appointed by the Court, and that it is even more difficult to develop rapport with a client when the defense attorney cannot share certain information with her client. Apart from the issue of trust, this Court also recognizes that clients may have valuable information about prospective witnesses that may assist defense counsel in developing impeachment information. Finally, this Court also *81 recognizes that clients often wish to know the identities of the witnesses against them in deciding whether to plead guilty, since this may help them to evaluate the strength of the evidence they may face at trial.
If a “sufficient showing” for a protective order required some evidence of intimidation or other misconduct towards a witness by the defendant or, indeed, by anyone, then the safeguard of a protective order under Mass.R.Crim.P. 14(a)(6) would become more theoretical than real. If a court must wait for some evidence of intimidation or misconduct before issuing a protective order, the order invariably will be too little and too late, because by then the defendant (and perhaps his friends and family) will already know the identities (and the location) of the alleged victim and witnesses.
Consequently, this Court finds that a “sufficient showing” for a protective order may be made without any intimidation or misconduct towards any witness having been shown, provided there is a showing that one or more witnesses fear retaliation or intimidation, and that there is a rational basis for their fear, whether based on the crime alleged, their knowledge of the defendant, or their knowledge that witnesses have suffered retaliation or intimidation in comparable cases in or around their community. Here, of course, there is the additional fact that the alleged victim has been shot again shortly before the defendant’s arraignment, although there is no evidence as to who was responsible for his shooting or whether the motive for the shooting had anything to do with the instant case. This Court finds that the Commonwealth has made a sufficient showing here that the civilian witnesses (including the alleged victim) and the alleged victim’s family fear retaliation or intimidation, and have a rational basis for their fear based on their knowledge of the crime charged (a shooting), the subsequent shooting of the alleged victim, and the prevalence of witness retaliation and intimidation in Dorchester in investigations and prosecutions for crimes of violence.
Having found that the Commonwealth has made a sufficient showing for some protective order, the issue shifts to determining the appropriate scope of that protective order, balancing the need to alleviate the witnesses’ fear of reprisal and intimidation with the defendant’s need for a vigorous defense and a fair trial. Pragmatically, there are various gradations of protective orders, with the most protective increasing the burden imposed on the defense but diminishing both the fear suffered by the alleged victim and witnesses, and the risk that they will suffer actual retaliation or intimidation. Without contending that these gradations are comprehensive, this Court sees them as follows, beginning with the most protective to the Commonwealth and moving to the least protective:
1.Postponing discovery to both defense counsel and the defendant On this gradation, both defense counsel and the defendant are barred from learning (a) the identity of an alleged victim or witness; (b) information that may enable them to locate an alleged victim or witness; and (c) the content of the prior testimony of an alleged victim or witness. Pragmatically, given the scope of this restriction, this bar would simply postpone discovery of this information to defense counsel, because defense counsel could not be expected competently to represent her client at trial without this information.
2. Providing limited discovery to defense counsel and barring it from the defendant On this gradation, the defense counsel would learn the content of the prior testimony of an alleged victim or witness, but not the true identity of the victim or witness or information that may permit them to be located. Their true names would be replaced by an identifying letter or number, so that reference may be made to them in other documents. Again, this would simply postpone discovery to defense counsel, who ultimately would need to know the true names before trial, but at least defense counsel would learn the substance of the prior statements of each witness.
3. Providing full discovery only to defense counsel, and barring it from the defendant On this gradation, defense counsel would learn of, but could not inform her client of, (a) the identity of an alleged victim or witness; (b) information that may enable the defendant to locate an alleged victim or witness; and (c) the content of the prior testimony of an alleged victim or witness. With this limitation, defense counsel could still proceed with her investigation and evaluate the evidence against her client, but she would likely be deprived of information that her client otherwise may have provided her if he had been told of this evidence against him. Similarly, without this information, it would be difficult for defense counsel to discuss the risks and benefits of a guilty plea, because defense counsel could not easily describe the evidence the defendant would likely face at trial.
4. Providing full discovery only to defense counsel, and limited discovery to the defendant, barring the defendant from having his own copies of witness statements. On this gradation, defense counsel would learn of (a) the identity of an alleged victim or witness; (b) information that may enable the defendant to locate an alleged victim or witness; and (c) the content of the prior testimony of an alleged victim or witness, but the defendant would learn only the content of prior testimony, without the information that could identify the alleged victim or witnesses or allow him (or someone close to him) to locate them. The defendant may read copies of prior witness statements and grand jury testimony in the presence of an attorney or an agent of the attorney, but those statements and grand jury testimony would be redacted to omit the names of witnesses and identifying or locator information, and the defendant would not be able to retain a copy. Here, too, in any redacted document shown or read to the *82 defendant, the true names would be replaced by an identifying letter or number, so that reference may be made to them in other documents. With this gradation, defense counsel would have the benefit of the defendant’s assistance to evaluate the content of witness testimony, but would need to invest the additional time involved in having her client read the witness testimony in her presence or in the presence of a member of her staff. This would significantly burden the time of defense counsel, especially when the defendant was in custody. Defense counsel under this gradation would not have the benefit of the defendant’s knowledge of any of the witnesses against him.
5. Providing full discovery only to defense counsel, and limited discovery to the defendant, allowing the defendant to have redacted copies of witness statements. On this gradation, defense counsel would learn of (a) the identity of an alleged victim or witness; (b) information that may enable the defendant to locate an alleged victim or witness; and (c) the content of the prior testimony of an alleged victim or witness, but the defendant would learn only the content of prior testimony, without the information that could identify the alleged victim or witnesses or allow him (or someone close to him) to locate them. The defendant may receive and retain copies of prior witness statements and grand juiy testimony, but those statements and grand jury testimony would be redacted to omit the names of witnesses and identifying or locator information. Here, too, in any redacted document shown or read to the defendant, the true names would be replaced by an identifying letter or number, so that reference may be made to them in other documents. With this gradation, defense counsel would have the benefit of the defendant’s assistance to evaluate the content of witness testimony, and the defendant would be able on his own to study the 'witness statements, but defense counsel would still not have the benefit of the defendant’s knowledge of any of the witnesses against him.
6. Providing full discovery to defense counsel and nearly full discovery to the defendant barring from the defendant only locator information and unredacted written witness statements. On this gradation, defense counsel would obtain all discovery but the defendant could learn only the identity of an alleged victim or witness, and the content of their prior testimony. The defendant would not be provided with any information that may enable the defendant to locate an alleged victim or witness. Moreover, the defendant would not be allowed to write down the names of the alleged victim or witnesses in his attorney’s presence, and would have to rely on his memory of their names. In addition, the defendant may receive copies of prior witness statements and grand jury testimony, but those statements and grand jury testimony would be redacted to omit the names of witnesses and identifying or locator information. The defendant may orally be told by defense counsel which witness made which statement, but would not have a copy with their names that could be passed on to others. Here, too, in any redacted document given to the defendant, the true names would be replaced by an identifying letter or number, so that reference may be made to them in other documents. With this gradation, both defense counsel and the defendant would learn the content of all discovery (except the defendant would not learn locator information), and the defendant on his own would be able to read the written statements (albeit with the name of the witness and locator information redacted).
The more protective the order, the more substantial must be the showing by the Commonwealth. Here the Commonwealth essentially seeks a “Grade 3" protective order. This Court finds that the showing made by the Commonwealth here justifies only a ’’Grade 4" protective order. This Court understands that the defendant already knows the identity of the alleged victim, and also knows that there were civilian witnesses to the alleged shooting. Based on the showing made by the Commonwealth, it is reasonable to prevent revelation of the names of civilian witnesses (or other information that may permit their identification), as well as locator information of civilian witnesses, to anyone other than defense counsel, and those assisting in his defense. It is also reasonable to take steps to ensure that copies of witness statements and grand jury transcripts be limited to defense counsel and those assisting in his defense, so that civilian witnesses do not need to fear being confronted with their statements by anyone other than defense counsel or his investigator. It is not reasonable, based on the showing here, to prevent the defendant from learning the content of redacted witness statements and grand jury testimony. Therefore, this Court allows the Commonwealth’s motion for a protective order, but only to the extent it seeks a “Grade 4,” rather than a “Grade 3,” protective order.
ORDER
For the reasons detailed above, this Court ALLOWS the Commonwealth’s Motion for a Protective Order to the extent that this Court ORDERS that:
1. Defense counsel shall be told the (a) the identity of civilian witnesses, and information that would permit their identification; and (b) information that may enable defense counsel to locate civilian witnesses (including the alleged victim), and may share this information with those assisting him in the defense, but is hereby barred from providing this information to anyone else, including the defendant and his family.
2. The Commonwealth shall provide defense counsel with one unredacted and one redacted copy of police investigative reports and grand jury transcripts, with the redactions omitting (a) the names of civilian witnesses and other information that would allow the identification of civilian witnesses, and (b) locator *83 information for these individuals. The unredacted copy may be shared only with those assisting defense counsel in the defense, not to anyone else, including the defendant and his family. The defendant may read copies of redacted police investigative reports and grand jury transcripts in the presence of an attorney or an agent of the attorney, but the defendant shall not retain a copy. In all redacted copies, the true names must be replaced by an identifying letter or number, so that reference may be made to them in other documents. All unredacted and redacted copies of police investigative reports and grand juiy transcripts that identify any civilian witness provided to defense counsel shall be Bates-stamped by the Commonwealth.
3. A copy of the tape recording of the 911 tape shall be provided to defense counsel, along with an un-redacted and redacted transcript of that part of the 911 tape containing telephone calls from civilian witnesses. The 911 tape recording and the unredacted transcript may be shared only with those assisting defense counsel in the defense, not to anyone else, including the defendant and his family. The redacted transcript may omit (a) the names and other information that would allow the identification of civilian witnesses, and (b) locator information for these individuals. The defendant may read copies of the redacted transcript in the presence of an attorney or an agent of the attorney, but the defendant shall not retain a copy. Nor shall the defendant be allowed to listen to the 911 tape recording in the event that he can identify the voice.
4. This Order may be modified by the Court after the case is scheduled for trial.

The Supreme Judicial Court has held that defense counsel at trial may be prevented from questioning a civilian witness in a murder trial about his current home address and place of employment when “the risk to [the witness’s] safety was ‘inherent in the situation, ’ thereby relieving the Commonwealth of its burden to demonstrate an actual threat to the witness.” Commonwealth v. Francis, 432 Mass. 353, 358 (2000), quoting Commonwealth v. McGrath 364 Mass. 243, 251 (1973) (“The nature of the crime charged and the fact that the witness was claimed to be a victim of physical violence, as in the case before us, might also make unnecessary any explicit disclosure of the threat of harassment or harm, because the threat is inherent in the situation”). However, that holding was limited to information at trial that may publicly disclose the location of the witness, and did not address the question of pretrial discovery of the witness’s identity and location.