Gants, Ralph D., J.
The defendant Cedric Warren has been indicted for the aggravated rape, armed robbery, and assault and battery by means of a dangerous weapon of a young woman on June 21, 1998. As alleged, the defendant accosted the alleged victim as she was walking home, showed her that he had a knife, raped her twice, and stole her pager. The alleged victim did not know the man who assaulted her and could not identify him. She quickly reported the rape when she returned home and told those present what had happened. Manyyears later, the DNAin the semen found on a genital swab taken from the alleged victim as part of the “rape kit” conducted at the hospital following the rape was linked to the defendant, and he was arrested for the crime. The defendant following his arrest denied committing any rape or knowing the alleged victim. He insisted that, if his semen were found, the sexual intercourse must have been consensual.
The Commonwealth has moved for a protective order under Mass.R.Crim.P. 14(a)(6) to protect the alleged victim and her relatives (as well as the boyfriend of her aunt) who may be witnesses at trial. In short, the Commonwealth through this protective order seeks to impose three restrictions upon the defendant and defense counsel:
1. While the Commonwealth does not seek to prevent defense counsel from orally telling the defendant *84 the names of the alleged victim or any witness, it does seek to bar him from telling the defendant information that may allow him (or someone helping him) to locate the alleged victim, the relatives of the alleged victim who may be witnesses at trial, or the boyfriend of the alleged victim’s aunt (“the locator information”), including their address, date of birth, social security numbers, and comparable information.
2. The Commonwealth seeks to prevent the defendant from writing down the names of the alleged victim or the witnesses after he is told their names by defense counsel.
3. The Commonwealth seeks to prevent defense counsel from providing the defendant with unredacted copies of police investigative reports and grand juiy transcripts. Rather, it wishes that defense counsel be allowed to provide the defendant only with redacted copies of these reports and transcripts, with the names and all locator information redacted from them.
After hearing, the motion for protective order is ALLOWED.
DISCUSSION
Under Mass.R.Crim.P. 14(a)(1), the Commonwealth must disclose to the defense “at or prior to the pretrial conference,” inter alia, “the grand juiy minutes, and the written or recorded statements of a person who has testified before a grand juiy,” “(t]he names, addresses, and dates of birth of the Commonwealth’s prospective witnesses other than law enforcement witnesses,” and “[a]ny facts of an exculpatoiy nature.” Mass.R.Crim.P. 14(a)(1). Since under the Criminal Time Standards the initial pretrial conference shall be conducted within one month of arraignment, this Rule essentially means that defense counsel and the defendant will know the names and addresses of witnesses, and the content of their grand jury testimony, early in the criminal process. Mass.R.Crim.P. 14(a)(6), however, permits a court to issue a protective order “(u)pon a sufficient showing” to deny, restrict, or defer discov-eiy as appropriate. The Rule provides in pertinent part:
Upon a sufficient showing, the judge may at any time order that the discoveiy or inspection be denied, restricted, or deferred, or make such other order as is appropriate. The judge may alter the time requirements of this rule. The judge may, for cause shown, grant discovery to a defendant on the condition that the material to be discovered be available only to counsel for the defendant. . .
Mass.R.Crim.P. 14(a)(6).
This case presents a set of facts that is not uncommon in Suffolk County. The defendant has been charged with a heinous crime of violence. Based on the representation of the Assistant District Attorney prosecuting the case, the alleged victim and certain prosecution witnesses (the alleged victim’s relatives, and the boyfriend of her aunt) are afraid that they will be hurt or intimidated if the defendant learns of their identities and location. Their fears cannot be said to have been caused by this defendant. They do not know the defendant and he has done nothing to indicate that he, in fact, will cause them to be injured or intimidated. In fact, he is in custody and, according to his counsel, does not wish his fellow detainees to know of the crime with which he has been charged, because he is fearful himself of retaliation. The issue, then, is whether these generalized fears of the alleged victim and witnesses, arising from the nature of the crime charged and their apparent recognition that other witnesses in other cases have been intimidated or injured in an effort to prevent them from giving testimony or to alter their testimony, constitutes the “sufficient showing” that may justify a protective order “for cause shown.” This Court knows of no Massachusetts appellate case law that specifically addresses this issue in the context of a Mass.R.Crim.P. 14(a)(6) motion for a protective order. [1]
The issue is hardly a simple one. This Court takes judicial notice that witness intimidation and retaliation is a significant problem in Suffolk County, especially in cases involving serious crimes of violence where the sentences upon conviction are likely to be long. This Court also takes judicial notice that, as a result, many witnesses in such cases are afraid, both for themselves and their families. This Court also takes judicial notice that some of these witnesses, out of fear, have refused voluntarily to appear at trial and evaded process to secure their appearance, and some have altered their testimony at trial to avoid fingering the defendant. This Court also takes judicial notice that witness fear and intimidation are having a corrosive impact on the quality of justice being provided in this Courthouse.
At the same time, this Court also takes judicial notice that defense attorneys need to know the identities of key witnesses so that they can conduct their own investigation of the events charged, explore the possibility that victim or witness testimony is marred by bias, self-interest, or honest mistake, and evaluate the strength of the Commonwealth’s case at trial to determine whether a guilty plea may best serve the interests of their clients. This Court also recognizes that it is often difficult for defense attorneys to develop a relationship of trust with their clients, especially when the defense attorney is appointed by the Court, and that it is even more difficult to develop rapport with a client when the defense attorney cannot share certain information with her client. Apart from the issue of trust, this Court also recognizes that clients may have valuable information about prospective witnesses that may assist defense counsel in developing impeachment information. Finally, this Court also recognizes that clients often wish to know the identities of the witnesses against them in deciding whether to plead guilty, since this may help them to evaluate the strength of the evidence they may face at trial.
*85 If a “sufficient showing” for a protective order required some evidence of intimidation or other misconduct towards a witness by the defendant or, indeed, by anyone, then the safeguard of a protective order under Mass.R.Crim.P. 14(a)(6) would become more theoretical than real. If a court must wait for some evidence of intimidation or misconduct before issuing a protective order, the order invariably will be too little and too late, because by then the defendant (and perhaps his friends and family) will already know the identities (and the location) of the alleged victim and witnesses.
Consequently, this Court finds that a “sufficient showing” for a protective order may be made without any intimidation or misconduct towards any witness having been shown, provided there is a showing that one or more witnesses fear retaliation or intimidation, and that there is a rational basis for their fear, whether based on the crime alleged, their knowledge of the defendant, or their knowledge that witnesses have suffered retaliation or intimidation in comparable cases in or around their community. This Court finds that the Commonwealth has made a sufficient showing here that the alleged victim and witnesses who are either members of her extended family or the boyfriend of her aunt fear retaliation or intimidation, and have a rational basis for their fear based on their knowledge of the crime charged (aggravated rape) and on the prevalence of witness retaliation and intimidation in Dorchester in investigations and prosecutions for crimes of violence.
Having found that the Commonwealth has made a sufficient showing for some protective order, the issue shifts to determining the appropriate scope of that protective order, balancing the need to alleviate the witnesses’ fear of reprisal and intimidation with the defendant’s need for a vigorous defense and a fair trial. Pragmatically, there are various gradations of protective orders, with the most protective increasing the burden imposed on the defense but diminishing both the fear suffered by the alleged victim and witnesses, and the risk that they will suffer actual retaliation or intimidation. Without contending that these gradations are comprehensive, this Court sees them as follows, beginning with the most protective to the Commonwealth and moving to the least protective:
1.Postponing discovery to both defense counsel and the defendant On this gradation, both defense counsel and the defendant are barred from learning (a) the identity of an alleged victim or witness; (b) information that may enable them to locate an alleged victim or witness; and (c) the content of the prior testimony of an alleged victim or witness. Pragmatically, given the scope of this restriction, this bar would simply postpone discovery of this information to defense counsel, because defense counsel could not be expected competently to represent her client at trial without this information.
2. Providing limited discovery to defense counsel and barring it from the defendant. On this gradation, the defense counsel would learn the content of the prior testimony of an alleged victim or witness, but not the true identity of the victim or witness or information that may permit them to be located. Their true names would be replaced by an identifying letter or number, so that reference may be made to them in other documents. Again, this would simply postpone discovery to defense counsel, who ultimately would need to know the true names before trial, but at least defense counsel would learn the substance of the prior statements of each witness.
3. Providing full discovery only to defense counsel, and barring it from the defendant On this gradation, defense counsel would learn of, but could not inform her client of, (a) the identify of an alleged victim or witness; (b) information that may enable the defendant to locate an alleged victim or witness; and (c) the content of the prior testimony of an alleged victim or witness. With this limitation, defense counsel could still proceed with her investigation and evaluate the evidence against her client, but she would likely be deprived of information that her client otherwise may have provided her if he had been told of this evidence against him. Similarly, without this information, it would be difficult for defense counsel to discuss the risks and benefits of a guilty plea, because defense counsel could not easily describe the evidence the defendant would likely face at trial.
4. Providing full discovery only to defense counsel, and limited discovery to the defendant, barring the defendant from having his own copies of witness statements. On this gradation, defense counsel would learn of (a) the identify of an alleged victim or witness; (b) information that may enable the defendant to locate an alleged victim or witness; and (c) the content of the prior testimony of an alleged victim or witness, but the defendant would learn only the content of prior testimony, without the information that could identify the alleged victim or witnesses or allow him (or someone close to him) to locate them. The defendant may read copies of prior witness statements and grand jury testimony in the presence of an attorney or an agent of the attorney, but those statements and grand jury testimony would be redacted to omit the names of witnesses and identifying or locator information, and the defendant would not be able to retain a copy. Here, too, in any redacted document shown or read to the defendant, the true names would be replaced by an identifying letter or number, so that reference may be made to them in other documents. With this gradation, defense counsel would have the benefit of the defendant’s assistance to evaluate the content of witness testimony, but would need to invest the additional time involved in having her client read the witness testimony in her presence or in the presence of a member of her staff. This would significantly *86 burden the time of defense counsel, especially when the defendant was in custody. Defense counsel under this gradation would not have the benefit of the defendant’s knowledge of any of the witnesses against him.
5. Providing full discovery only to defense counsel, and limited discovery to the defendant, allowing the defendant to have redacted copies of witness statements. On this gradation, defense counsel would learn of (a) the identity of an alleged victim or witness; (b) information that may enable the defendant to locate an alleged victim or witness; and (c) the content of the prior testimony of an alleged victim or witness, but the defendant would learn only the content of prior testimony, without the information that could identify the alleged victim or witnesses or allow him (or someone close to him) to locate them. The defendant may receive and retain copies of prior witness statements and grand jury testimony, but those statements and grand jury testimony would be redacted to omit the names of witnesses and identifying or locator information. Here, too, in any redacted document shown or read to the defendant, the true names would be replaced by an identifying letter or number, so that reference may be made to them in other documents. With this gradation, defense counsel would have the benefit of the defendant’s assistance to evaluate the content of witness testimony, and the defendant would be able on his own to study the witness statements, but defense counsel would still not have the benefit of the defendant’s knowledge of any of the witnesses against him.
6. Providing full discovery to defense counsel and nearly full discovery to the defendant, barring from the defendant only locator information and unredacted written witness statements. On this gradation, defense counsel would obtain all discovery but the defendant could learn only the identity of an alleged victim or witness, and the content of their prior testimony. The defendant would not be provided with any information that may enable the defendant to locate an alleged victim or witness. Moreover, the defendant would not be allowed to write down the names of the alleged victim or witnesses in his attorney’s presence, and would have to rely on his memory of their names. In addition, the defendant may receive copies of prior witness statements and grand jury testimony, but those statements and grand jury testimony would be redacted to omit the names of witnesses and identifying or locator information. The defendant may orally be told by defense counsel which witness made which statement, but would not have a copy with their names that could be passed on to others. Here, too, in any redacted document given to the defendant, the true names would be replaced by an identifying letter or number, so that reference may be made to them in other documents. With this gradation, both defense counsel and the defendant would learn the content of all discovery (except the defendant would not learn locator information), and the defendant on his own would be able to read the written statements (albeit with the name of the witness and locator information redacted).
The less protective the order, the less substantial need be the showing by the Commonwealth, although it must be a “sufficient showing” to justify any protective order. Here, the Commonwealth reasonably is seeking the lowest gradation of protective order, providing the least protection to the alleged victim and prospective witnesses, but also imposing the least burden on defense counsel and the defendant. This Court finds that the “Grade 6" protective order sought by the Commonwealth is appropriate given the sufficient, but limited, showing made by the Commonwealth in.this case. Therefore, this Court allows the Commonwealth’s motion for a protective order, with one amendment: as noted earlier, in any redacted document given to the defendant, the true names must be replaced by an identifying letter or number, so that reference may be made to them in other documents.
ORDER
For the reasons detailed above, this Court ALLOWS the Commonwealth’s Motion for a Protective Order to the extent that this Court ORDERS that:
1. While the Commonwealth does not seek to prevent defense counsel from orally telling the defendant the names of the alleged victim or any witness, defense counsel is barred from telling the defendant information that may allow him (or someone helping him) to locate the alleged victim, the relatives of the alleged victim who may be witnesses at trial, or the boyfriend of the alleged victim’s aunt, including their address, date of birth, social security numbers, and comparable information.
2. Defense counsel may not allow the defendant in his presence to write down the names of the alleged victim or the witnesses after he is told their names by defense counsel.
3. The Commonwealth may provide defense counsel with one unredacted and one redacted copy of police investigative reports and grand jury transcripts, with the redactions omitting (a) the names and other information that would allow the identification of the alleged victim, the relatives of the alleged victim who may be witnesses at trial, and the boyfriend of the alleged victim’s aunt, and (b) locator information for these individuals. Only the redacted copy may be provided by defense counsel to the defendant. In the redacted copy given to the defendant, the true names must be replaced by an identifying letter or number, so that reference may be made to them in other documents.
4. This Order may be modified by the Court after the case is scheduled for trial.

The Supreme Judicial Court has held that defense counsel at trial may be prevented from questioning a civilian *87 witness in a murder trial about his current home address and place of employment when “the risk to [the witness’s] safety was ‘inherent in the situation,’ thereby relieving the Commonwealth of its burden to demonstrate an actual threat to the witness." Commonwealth v. Francis, 432 Mass. 353, 358 (2000), quoting Commonwealth v. McGrath, 364 Mass. 243, 251, (1973) (“The nature of the crime charged and the fact that the witness was claimed to be a victim of physical violence, as in the case before us, might also make unnecessary any explicit disclosure of the threat of harassment or harm, because the threat is inherent in the situation”). However, that holding was limited to information at trial that may publicly disclose the location of the witness, and did not address the question of pretrial discovery of the witness’s identity and location.